Good morning. I'm the mayor of Police Record, Tim Murphy, Federal Public Defender's Office. Your Honor, we have four restitution orders that we're challenging on appeal. I'd like to comment on all of them at some point if I can, but I'd really like to start with filing. I'm going to use the synonyms by the first names. I know there's a phrase also that the court uses. It's okay with the court, as long as you know who I'm talking about. So a lot of what I'm going to be speaking about has to do with 2259 B2A. And I would describe that as kind of the gatekeeper provision of B2. The court is required to make a determination of the loss as a result of the trafficking. And we even see in B2B that you have to make sure that you've done that determination before you go on. So it's a mandatory statute with $3,000 as a minimum, but only if you get past B2A. I just made that point to you. With regards to filing, the record is undisputed that she had no knowledge of the dissemination of these images. I would point to the last that you heard from her private attorney was at 219 of the sealed documents. There's no dispute. She did not know about the dissemination of these images. We are asking the court to find that if you have never found out about these images, your restitution should be zero. And I point to a line for this proposition. There are three opinions in parallel. There's the majority of the two dissents. All of the authoring judges, all in describing the harm that can come to a victim from a dissemination of child pornography images, they're all based on the premise of knowing about them. Well, isn't it inevitable as a matter of law that people learn about them or not, by victim notification or not? I would push back on that for a couple reasons, Your Honor. And I would start with page 243 of the record from Dr. Green. Dr. Green, and I think this gets at where you're going with this, because she does not know of their existence, I cannot offer an opinion based upon how she has responded to a discovery that has not yet occurred. But then, I know you know that quote, but then the doctor goes on to give us variables about the circumstances of discovery. And those variables include the age, the support system you have, the manner in which you're told. If you look online, the FBI has a victim services unit, and it is their policy to go to the guardian, the responsible adult first, and then they have that opt-out procedure, if you don't want to know. I'm talking about when they're 18. And it's at that time that the FBI does go to the parent first. So it's not this automatic letter that gets sent to them without this filter. So the variables involved here mean that even if she does eventually find out, you can't know what her harm is unless she gets examined again after she's learned. Dr. Hickman, he goes on to say, projecting actual therapeutic needs years in advance of these developments is, at best, speculative. Now, what the government's theory has to be under B2A is that this is a reasonable projection of the cause. In other words, you can't say that she has incurred these causes since she has not. She doesn't know about the images. But if you say in the future she's going to, it has to be a reasonable projection. And what we would say, speculation is the polar opposite of a reasonable projection. Her restitution should be zero. And that doesn't mean that the person who traffics in these images doesn't get punished. I mean, my client is serving a prison sentence. But the restitution, the compensatory nature restitution, putting her in the place where she was before financially, it should be zero for my client. Dr. Green does say it's more likely than not that she will incur these harms because it's likely that she will learn of it in some manner. I mean, isn't that a reasonable projection? I would say no because of the way the FBI goes about informing the parent or guardian, the responsible adult first. And there's another phrase you'll see in their policy, if you did come across it, and that is that it's case by case. There are unique circumstances on how they notify these individuals when they turn 18. It's so fact sensitive. To come up with a number before you get examined, after you learn, is pure speculation in our estimation. I'd like to make a couple of other comments. I just wanted to ask before you leave, Violet, the 11th Circuit did find a reasonable basis for restitution with regard to her on essentially the same showing about psychological studies. So you're saying they erred in doing that? I would say that, yes. So you're just not, we're just not able to look at studies and the likely effects in awarding restitution? As far as looking at them, they shouldn't be determinative when you're talking about predicting a result that's so fact sensitive. When we look at reasonable projections, we're mostly talking about numbers. When you think about someone's potential income, you can, there's a numerical pattern that you can go through. When you're trying to predict someone's reaction before it happens, when you don't know how the parents are going to be able to filter this, you don't know how the opt-out choice that she's going to have is going to impact this, even if she does eventually learn of it, which is, I would not concede that that's inevitable. You simply cannot come up with a number yet. Dr. Green effectively, I believe, concedes that. He has a lot of other words, has a word salad around, I've dealt with other people, this is what I think could happen. And when you say a number, you're at step one, you're talking about the number of aggregate harm, right? Yes, sir. Yes, I am. May I make just a couple quick comments, staying in B2A just for a minute, with regards to Jane and then Vicki. Victim Jane, very outdated information and contradictory. All of these attorneys submitted cover letters and applications in 2021. My client took a plea in 2021, the restitution proceedings were two years later in 2023. In support of Jane's application was a nine-year-old psychiatric report from 2014 when she was in eighth grade, and she apparently was, you'll see this at 131 and 132 of the sealed documents, she apparently was doing very well in school, was looking forward perhaps to even going to college someday, and you look at 140 on the record, she'd be the first person in her family to go to college, she was motivated to do it. But then they submit another report the next year, eight years old, eight before, eight years before the restitution proceedings. And they come up with this economic theory that if Jane was kept from going to college because of the dissemination of these images, then she would be out, you know, these numbers almost $4 million. We find this to be speculative, we hope the court does too. Even more troubling, though, with this application is how old this information is. The information about how she was doing in the eighth grade was nine years before the restitution proceedings in July of 2023. And just a quick comment, because I've been running long ahead of time, about Vicki's application. Vicki's application was the much more extensive one, she had been litigating this for years, she now has a psychology degree, and her attorney, I think, has been representing her for like a decade. Her last economic report was nine years old, her last psychiatric report was six years old. We would ask this court to find this inexcusable to have such outdated information. I want you to think about this for a second. This particular victim had litigated this to the extent where there were 1,500 prior restitution orders. The government had this application for over two years before the restitution proceedings. There's no excuse, at least with regards to this particular victim, to not have more updated information. And we think that that violates B2A, which is the first problem. All right, I'm a little bit over time, but thank you very much. We'll hear from the government. May it please the court, Monica Richards, again, on behalf of the United States of America. With regard to the claims, I don't disagree that some of these reports are older than eight, nine years old. They were filed, the requests for restitution were made two years before the proceeding, but the standard before this court is whether or not the awards that were made were reasonable. And here, nobody's holding this defendant to the tune of the full amount claimed by any means. We're talking about the mandatory minimum under the, I'm sorry, something to my criminal language, but we're talking about minimum restitution of $3,000 with regard to each is what's warranted, is what's directed by the NVRA. So when we, the government, gets these submissions, those aren't our submissions, they come from the victims, just like in every other case where there's victim submissions, the victim impact statements come through the representatives or the victims themselves, and we marshal them together and forward them to the court. The court made some follow-up inquiries with regard to amounts received to date, and the government provided updated information to the court when the court was making sure that we didn't have, there's a stop gap, there's a stop measure in the same statute that provides that if the victims recovered up to the full amount anticipated loss that they don't receive anymore, that's of course something in the statute that's reasonable. So the court was just assuring itself that nobody had to date received an amount that was greater than what the projected losses were. So that updated information we provided to the court, but otherwise there was no request for additional information from the court or the arguments obviously regarding scaleness were made, but that was the extent of the government's obligation there. So when these awards were made to the tune of, you know, each of them $10,000 or less, when faced with the entirety of the claims that were presented to the court, I think this court would be hard-pressed to find that there was an error, that this was anything other than reasonable, where we're talking about sentencing, which is sentencing findings which are made by a preponderance of the evidence. Unless there's further questions. I have a question about the Henley award. Yes. What's the basis for the district court's arrival of $500,000 as the loss attributable to career prospects? The district court, as I understand, I know that there's nothing in the record that says exactly, you know, some specific formula that the court used or anything. The court made the number based on the victim impact statement that's available in the record somewhere around, I think it's in the sealed appendix at page 72, the victim herself provided a statement as to her intentions with regard to a modeling career, and the district court looked at that and found a number that it deemed reasonable to be $500,000. Found a number somewhere? Not a number that was submitted. You're saying maybe finding. The district court made an estimation or came up with a reasonable estimation of what it's set as a projected figure for the vocational impact for this victim. The victim information, the materials that were provided by the victim herself didn't have a number. Did not have a number. No, no they did not. Thank you. Unless there's anything else, at best I might break. Thank you. I want to say briefly so that, and we've already addressed that, that Congress kind of hedged their bets here that they have the word mandatory several times in the statute, but of course we had to get the B2A and the losses have to be correctly calculated first. But counsel also mentioned, was making reference really to B2C as well. That's kind of the parsimony clause, if you will, of the statute, and that's supposed to be exceeding the losses that were already recovered. But again, if that's, this is not based on reliable and timely information, how can we rely on the court's decision here? With regards to Henley, I would point out a couple of things about Henley since you had mentioned this. George O'Carroll is 163 and 164 of the public, of the joint attendance, public documents there. He noted that this was at least 605,000. He kind of gives disclaimers to the average of losses he gives for Henley and for Jane. And then he also recognizes on the record, and this is 163 to 164, and for Jane it's 165 to 166. He does the same thing. He gives kind of disclaimers. He says at least 605,000 for Henley. And then he mentioned 7.7 million for Jane, not including attorney fees. And again, he doesn't give specific numbers. He then references the fact that the government says that Henley was owed 1.8 million, which is three times the amount of the aggregate loss that he found. And then he says for Jane, it was 10.2 million what is owed, which is more than the aggregate amount that he found for her. He has these disclaimers, as my only point to you, in his analysis. And in addition to that, for both Henley and Lane, we do not have the number of prior restitution orders. In the past, we have those for the other vendors. My only point, I'm not running the money in the waters. It's just that when you're looking at B2C, the requirement is that it doesn't exceed the demonstrated losses. And the demonstrated losses, meaning the numerical, the ones you can put a number on, he doesn't really seem to nail down. And one of the many reasons why we asked that this be vacated. This record is just not clear that the court properly complied with B2C. And we don't want to let that happen. Thank you very much. Thank you both, and we'll take this matter under advisement.